# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MOUSTAPHA SACKO | : | DOCKET NO. 2:05-cv-264<br>Section P |
| VS. | : | JUDGE MINALDI |
| ALBERTO GONZALES, ET AL. | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by petitioner, Moustapha Sacko. In his petition, the petitioner challenges his continued detention pursuant to INA § 241(a)(6) and argues that there is no significant likelihood of his being removed in the reasonably foreseeable future. This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

After reviewing the petition, the answer by the respondent, and the reply by the petitioner, it was determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition. Accordingly, on October 20, 2005, an evidentiary hearing was held before the undersigned for the express purpose of hearing evidence on the issue of whether petitioner's post-removal-order detention exceeds the period of time reasonably necessary to bring about that his removal from the United States.

## FACTUAL SUMMARY

The court will summarize the facts regarding Petitioner and his detention from the evidence in the record and the testimony presented at the evidentiary hearing.

Petitioner initially entered the United States on or about May 5, 1990 in an unknown status. Based upon a criminal conviction in a Virginia state court, petitioner was placed into deportation proceedings in 1996. On October 31, 1996, an immigration judge ordered petitioner's deportation to Mali or, in the alternative, to Liberia. *See* Government Exhibit 5. With the assistance of petitioner's relatives, a birth certificate and travel documents were obtained from Mali, and petitioner was deported to the Republic of Mali on November 18, 1996. *See* Government Exhibits 6-8. In 1997, petitioner obtained a Rwandan passport under the name of Moustapha Sacko Rugina and was able to re-enter the United States on a visitor's visa.

On June 21, 2004, Petitioner, who was incarcerated at Riker's Island in New York, was encountered by immigration officials and determined to be a criminal alien. *See* Government Exhibit 13. That same date, an arrest warrant was served on Petitioner along with a Notice of Custody Determination which informed Petitioner that he was to be detained pursuant to INA § 236 without bond pending removal proceedings. *See* Government Exhibits 14-15. In an effort to obtain information for a travel document, Petitioner was interviewed by immigration officials. During his interview, Petitioner stated that he was born in Burundi and attended school there. He gave the name of his former school and a street address for his last permanent residence in that country. He also stated that he last resided in Rwanda before entering the United States. He indicated that his father was born in Mali and that his mother was born in Rwanda. *See* Government Exhibit 16.

On June 22, 2004, a Notice to Appear was served on Petitioner, charging him with being inadmissible under INA § 237(a)(1)(A). *See* Government Exhibit 17. The Notice to Appear alleged that Petitioner was not a citizen of the United States, that he was a native and citizen of Liberia, that he had previously been deported from the United States in 1996, that he was admitted to the United

2

States in 1997 on a B-1 visitors visa, and that he did not receive prior consent of the Attorney General to reapply for admission to the United States. Petitioner denied the allegations concerning his Liberian citizenship and his failure to reapply for admission. He admitted all other allegations, and on July 15, 2004, an immigration judge ordered petitioner's removal to Burundi and, in the alternative, to Liberia. *See* Government Exhibit 19. Petitioner waived his right to appeal this decision, and he has been in post-removal-order custody since July 15, 2004.

On July 20, 2004, the Department of Homeland Securities (DHS) forwarded a formal request for a travel document to the Embassy of the Republic of Mali. *See* Government Exhibit 21. On this same date, DHS also sent a Request for Acceptance of Alien to the Embassy of Liberia and to the Republic of Burundi. *See* Government Exhibits 22-23. The Republic of Burundi responded to the request of DHS by indicating that petitioner would not be permitted to enter Burundi upon his removal from the United States. *See* Government Exhibit 24. There has been no reported response from either Liberia or Mali to these requests.[1]

On July 29, 2004, Petitioner was served with a Notice to Alien of File Custody Review informing Petitioner that his custody would be reviewed on or about August 28, 2004. *See* Government Exhibit 26.

On August 2, 2004, Petitioner wrote a letter to the Consulate for the Republic of Burundi requesting a travel document. *See* Government Exhibit 27. In this letter, Petitioner states that he is a native and citizen of Burundi.

On or about September 7, 2004, the DHS reviewed Petitioner's custody status and reported

---

[1] Notes from the Custody Review Worksheet indicate that on 9/7/04, in response to calls from DHS, the Embassy of Mali stated that it would check on status of travel document request and call back and the Embassy of Liberia told DHS to resubmit another I-241 (Request of Acceptance of Alien).

that Petitioner was hampering his removal by providing false information. *See* Government Exhibit 28. Therefore, the reviewing officer recommended continued detention. On October 1, 2004, a formal Decision to Continue Detention was signed. *See* Government Exhibit 29. This decision was based upon the fact that the information in Petitioner's immigration file conflicted with the recent information given by Petitioner to the immigration officials.

On December 7, 2004, DHS forwarded a request for assistance in obtaining a travel document for Petitioner to its headquarters in Washington, D.C. *See* Government Exhibit 31.

On December 17, 2004 Petitioner's Post Order Custody Review was resubmitted, and the reviewing officers recommended continued detention based upon the belief that Mali would issue a travel document and that Petitioner was a flight risk. *See* Government Exhibit 32. On June 1, 2005, a Decision to Continue Detention was issued. *See* Government Exhibit 33.

On June 3, 2005, Petitioner provided information to immigration officials for their use in obtaining a travel document. *See* Government Exhibit 34. In this sworn statement, petitioner stated:

- his correct name is Moustapha Sacko;
- he used his middle name (Rugina) to obtain a visa and passport from Rwanda;
- he was born is Bujumbura, Burundi but is uncertain of his citizenship because of civil unrest in that region;
- his mother was born in Rwanda;
- his father was born in Mali;
- he was previously deported to Mali; and
- when he was in Liberia in 1990, he claimed to be from Liberia in order to save his life.

In September, 2005, Petitioner was interviewed by the Liberian Embassy. At this interview, the petitioner told the Liberian Consulate that he was not born in Liberia.

At the evidentiary hearing on October 20, 2005, Deportation Officer Nichols testified that because Petitioner had previously been deported to Mali and because his alien file contains a Mali birth certificate, his efforts to deport Petitioner were focused almost entirely on Mali despite information from Petitioner that he was born in Burundi. Based upon Petitioner's testimony and the information contained in Petitioner's file with respect to Burundi, Deportation Officer Nichols indicated that he would submit a complete travel document request to Burundi, not just an I-241 Request for Acceptance of Alien. The government requested that Petitioner's post-removal-order detention period be extended up to 6 months from the date of the hearing in light of the fact that the inconsistent information in the record hindered DHS' efforts to remove petitioner.

Petitioner's attorney argued that since coming into immigration custody in June, 2004, Petitioner has provided DHS with consistent information regarding his birth in Burundi. Accordingly, he disputes the government's claim that Petitioner has hampered his removal by providing inaccurate information. He requests that the court order petitioner's immediate release from custody since he has been detained beyond the presumptively reasonable 6 month removal period.

## **LAW AND ANALYSIS**

The issue before the court is whether Petitioner's continued post-removal-order detention in DHS custody is lawful. The government argues that Petitioner's detention is lawful and that the removal period has been extended because of the petitioner's efforts to hamper his removal from the United States. The petitioner claims that he has not hampered his removal and that he has

5

cooperated fully with the immigration officials in their efforts to obtain a travel document for him. Nevertheless, he argues that there is no significant likelihood of removal in the reasonably foreseeable future and that his continued detention is unlawful.

Following an order of removal, the INS is given 90 days to effect the removal of the alien. INA § 241(a)(1). This 90-day period of time is referred to as the removal period. During this removal period, the alien is subject to detention. INA § 241(a)(2). If the alien cannot be removed during the removal period, the alien is generally released to supervision. INA § 241(a)(3). However, INA § 241(a)(6) authorizes the INS to detain certain inadmissible or criminal aliens if the Attorney General determines that the alien is a risk to the community or unlikely to comply with the order of removal.

In *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001), the United States Supreme Court found that INA §241(a)(6), when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 121 S.Ct. at 2498. The Supreme Court went on to recognize six months as a presumptively reasonable period of detention for INS detainees following a final order of removal. *Zadvydas*, 121 S.Ct. at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

In this matter, the facts establish that Petitioner has been in post-removal-order detention since July 15, 2004, a period of time greater than 6 months. Thus, there is no longer a presumption of reasonableness attached to his detention. While this does not mean that petitioner is automatically entitled to be released from post-removal-order custody, it does allow a *habeas* court to inquire into "whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 121 S.Ct at 2504. In *Zadvydas*, the Supreme Court stated that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."

The initial inquiry the court must make is whether Petitioner has borne his burden of showing that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Based upon the length of time that petitioner has been in post-removal-order custody (over 15 months), the fact that Burundi has declined to issue a travel document for Petitioner, and the failure of Liberia or Mali to indicate that they might issue a travel document in the reasonably foreseeable future, the court finds that the petitioner has satisfied this burden.

The burden now shifts to the government to respond with evidence sufficient to rebut the petitioner's showing. *Zadvydas*, 121 S.Ct. at 2505. In order to satisfy its burden, the government argues that the petitioner's removal period has been tolled because Petitioner has provided conflicting and inaccurate information which has delayed the removal process.[2] Specifically, the government

---

[2] In the custody decisions issued in petitioner's case, DHS has also determined that petitioner is a danger to the community and a flight risk. *See* Government Exhibit 33. However, the Supreme Court in *Zadvydas* found that these considerations are not relevant to the issue of whether there is a significant likelihood of removal in the reasonably foreseeable future. Specifically, the Supreme Court, in *Zadvydas*, found that neither the risk of flight nor the risk of danger to the community justifies indefinite detention under INA § 241(a)(6), unless there is evidence that an alien is specially dangerous and other circumstances, such as mental illness, are present which help create the danger and there are strong procedural protections in place. *Zadvydas*, 121 S.Ct. 2499.

argues that at various times in the past, the petitioner has claimed to be a native and/or citizen of several countries, including Mali, Liberia, Rwanda, and Burundi and that these misrepresentations are the cause for delay in obtaining a travel document for Petitioner.

There is some documentation in Petitioner's alien file which contributes to the confusion about his country of origin, including a birth certificate from Mali.[3] However, as pointed out by Petitioner during his testimony, the documents which list Mali or Liberia as Petitioner's place of birth were neither prepared nor signed by him. Further, the testimony and evidence presented at the evidentiary hearing indicate that since coming into the custody of immigration officials in June, 2004, Petitioner has provided consistent information about his place of birth (Bujumbura, Burundi). *See* Government Exhibits 16, 33, & 34. He even provided the name of the school that he attended in Burundi and a street address for his last permanent residence in that country.[4] The I-217 which was prepared on June 21, 2004 indicates that Petitioner sought to clarify his place of birth as being Burundi instead of Bamako, Mali on the I-217. *See* Government Exhibit 16. Nevertheless, when this information was transferred to a type-written I-217, Petitioner's place of birth was again listed by the immigration official as Bamako, Mali. *See* Government Exhibit 20. The court finds that the decision of DHS to discount the information provided by Petitioner cannot be considered affirmative action by the petitioner to hamper the removal effort. Thus, the court finds that the removal period has not been tolled as a result of "hampering" by the petitioner.

Because Petitioner has been detained beyond the presumptively reasonable 6 months removal

---

[3] It is interesting to note that while this birth certificate lies at the crux of the government's "hampering" argument, this birth certificate was apparently obtained by petitioner's relatives in order to **assist**, not hinder, petitioner's prior removal from the United States.

[4] Deportation Officer Nichols testified that this type of information is very helpful in obtaining travel documents and that street addresses are rarely provided by an alien.

period, in order for his detention to remain lawful, the government must show that there is a significant likelihood of removing Petitioner in the reasonably foreseeable future. The government has presented no evidence that a travel document will be issued for Petitioner by Mali or any other country in the reasonably foreseeable future. Deportation Officer Nichols testified that obtaining travel documents from African countries is difficult. However, the "potential" that a travel document will be issued at some point in the future is not sufficient to sustain the government's burden.[5] Additionally, the fact that DHS will now re-focus its efforts on Burundi does not establish that petitioner will be removed in the reasonably foreseeable future.

Accordingly, in light of the length of time that the petitioner has already been detained, the lack of evidence to support a finding that petitioner has taken affirmative steps to hamper DHS' removal efforts, and the lack of evidence to indicate that there is a significant likelihood that Petitioner's removal will occur in the reasonably foreseeable future, the undersigned finds that Petitioner's detention exceeds a period reasonably necessary to secure his removal. Thus, in accordance with *Zadvydas*, this court finds that Petitioner's continued detention is unreasonable and no longer authorized by statute. *Zadvydas*, 121 S.Ct. at 2504.

For these reasons,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be GRANTED and that

---

[5]In fact, the Supreme Court expressly reversed the Fifth Circuit's decision in *Zadvydas v. Underdowne,* 185 F.3d 279 (5th Cir. 1999) which had held that Zadvydas' detention did not violate the Constitution because his eventual deportation was not impossible, good faith efforts to remove him continued, and his detention was subject to periodic reviews. *Zadvydas*, 121 S.Ct. at 2496. The Supreme Court held that "this standard would seem to require an alien seeking release to show the absence of *any* prospect of removal– no matter how unlikely or unforeseeable– which demands more than our reading of the statute can bear." *Zadvydas*, 121 S.Ct. at 2505.

Petitioner be released from custody[6] if not removed prior to the date that the judgment is signed in this case.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 25th day of October, 2005.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[6] In the event that ICE is not able to remove Petitioner within 30 days of the date of the judgment, his release may, of course, be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and he may, no doubt, be returned to custody upon violation of those conditions. *Zadvydas v. Davis*, 121 S.Ct. 2491, 2504 (2001); 8 U.S.C. § 1231(a)(3).